**Carl McWHERTER, Appellant,**

v.

**The AGUA FRIO RANCH, Appellee.**

**No. 08–03–00435–CV.**

Court of Appeals of Texas, El Paso.

July 15, 2005.

Steve Spurgin, Marfa, for Appellant.

David Wayne Lauritzen, Cotton, Bledsoe, Tighe & Dawson, Midland, for Appellee.

Before McCLURE, CHEW, and RIVERA, JJ. (Rivera, J., Sitting by Assignment)

### OPINION

DAVID WELLINGTON CHEW, Justice.

Appellant Carl McWherter appeals from a partial summary judgment granted in favor of Appellee, The Agua Frio Ranch (Agua Frio) against Texas Bentonite, L.C. Mr. McWherter asserts three issues. In Issue One, he challenges the granting of

the partial summary judgment. In Issue Two, he challenges the termination of the lease agreement between Agua Frio and Texas Bentonite. In Issue Three, he challenges the trial courts granting of the motion to sever the order granting partial summary judgment filed by Agua Frio. We will dismiss the appeal.

In December of 2000, Agua Frio Ranch filed a lawsuit against Texas Bentonite, L.C., Carl McWherter, John Doe No. 1, and John Doe No. 2. The lawsuit concerned a lease entered into in 1987, where Agua Frio leased approximately 23,000 acres of ranch land in Brewster County, Texas, to B.P. McKinney for bentonite mining. The lease was later assigned to Texas Bentonite.

The lease provided for, *inter alia,* royalty payments to Agua Frio in the amount of a flat rate of Five and no/100 Dollars ($5.00) per ton for all bentonite removed from the premises, with $3.50 of said $5.00 being payment for the bentonite product itself and the remainder for damages to the surface, with payment to be made within ten (10) days of Lessees receipt of payment for all material removed. It also required the lessee to at all times, keep written records of the amounts and material removed from the Lease and the same shall be available to Lessors for the purpose of verifying such amounts.

In early 2000, Agua Frio requested an audit of Texas Bentonites written records of the amounts and material removed from the property.[1] An audit was scheduled for May 31, 2000 and was attended by Mr. McWherter and Ronnie Henzie, appearing on behalf of Texas Bentonite; Mr. McWherter provided Agua Frio with a hand generated spreadsheet of numbers prepared by Mr. Henzie specifically for the audit. Further documentation was needed for the CPA firm hired by Agua Frio to reconcile and at a second meeting, Agua Frio requested numerous documents which Texas Bentonite failed to provide. At a third meeting, Mr. McWherter disclosed that some of the invoices were simply created in order to secure loans made to Texas Bentonite, and that this would make it difficult to reconcile. He further represented that Texas Bentonite had not received payment for the bentonite sold and thus, royalty payments had not been made to Agua Frio. He also stated that some bentonite was sold to Jerry Bakke; Mr. Bakkes payments had been recorded as payments on debts owed by Mr. Bakke to Texas Bentonite, and not as income subject to royalties.[2] As required by the lease, Agua Frio granted Texas Bentonite additional time to provide all the necessary documentation to fully determine the production and sales of Texas Bentonite on the lease, but even then Texas Bentonite failed to produce any more documents.

In its original petition, Agua Frio presented seven causes of action. It alleged the following:

(1) breach of contract by Texas Bentonite;

---

1. As represented by Agua Frios attorney, it requested specific information from Texas Bentonite, including documentation demonstrating production from the lease; records of all tonnage produced from the lease; records indicating the amount of bentonite sold from the lease; all production contracts between Texas Bentonite and buyers; bank statements and deposit slips of Texas Bentonite; all tax returns of Texas Bentonite, including income tax and production tax; documentation showing all royalty payments made to the Ranch; documentation demonstrating all sales to third parties from the production of the lease in which the lessors have a royalty interest; and tax returns and preparation reports for Texas Bentonite.

2. Mr. Henzie corroborated this information.

(2) fraud, breach of fiduciary duties, and negligence per se, gross negligence and willful misconduct by Texas Bentonite and Mr. McWherter;

(3) aiding and abetting a fiduciary in breach of its duties, against John Doe 1 and John Doe 2;

(4) civil conspiracy to commit fraud, breach of fiduciary duty, breach of contract, negligent per se, gross negligence and willful misconduct by all the named defendants; and

(5) fraudulent concealment by all the named defendants.

In May of 2001, Texas Bentonite filed its original answer containing a general denial and two affirmative defenses pertaining to standing and statute of limitations and Mr. McWherter filed his original answer *pro se*.

Agua Frio then filed a motion for partial summary judgment against Texas Bentonite, only. The motion did not name or include relief from Mr. McWherter. In its motion, Agua Frio alleged that Texas Bentonite had breached its contractual obligations under the lease by failing to keep adequate records demonstrating the amount of production and royalty due to Agua Frio as provided by the lease. Agua Frio asked the trial court to: (1) grant a judgment against Texas Bentonite and determine that it had breached its Lease Agreement with Agua Frio; and (2) that because of the breach, Agua Frio was entitled to cancel the Lease as a matter of law. Texas Bentonite filed a response refuting Agua Frios allegations. Texas Bentonite included the following paragraphs in part of its response:

Although Plaintiffs motion does not seek monetary damages, it does seek attorneys fees incurred in the prosecution of this matter. Texas Bentonite believes, and intends to prove, that any breach of the Lease was caused or intentionally undertaken by Defendant McWherter, while he was the general manager of Texas Bentonite, in breach of his fiduciary duties to the company. Texas Bentonite was completely unaware of the wrongful activities of Defendant McWherter while he held that position. Texas Bentonite believes that the Lease between Texas Bentonite and Plaintiff was not fulfilled because Defendant McWherter, acting contrary to the best interests of the company he was duty-bound to present, withheld information and did not pay the royalties owed under the Lease. *See* Exhibit A. Plaintiffs summary judgment evidence indicates that Defendant McWherter was acting on [sic] concert with other individuals in attempting to defraud Plaintiff in breach of the Lease agreement.

To the extent that there is any damage or wrongdoing, Defendant Texas Bentonite believes and contends that that liability falls squarely on Defendant McWherter, who was acting as a rogue officer, in violation of his fiduciary duties to the company. *See* Exhibit A. Texas Bentonite is currently investigating its claims against Defendant McWherter, which will be filed with this Court when appropriate.

On November 8, 2001, Attorney Monty Kimball entered an appearance of counsel for Mr. McWherter.[3] McWherter then filed a response to Agua Frios motion contending that a fact issue existed as to whether or not the documents provided by Mr. McWherter, acting for Texas Benton-

---

**3.** On March 21, 2002, the trial court entered an order allowing Mr. Kimball to withdraw as Mr. McWherters counsel. Attorney Steve Spurgin entered an entry of appearance of counsel for Mr. McWherter in September of 2002 and remains his attorney in this appeal.

ite, and the paid royalty payments satisfied the relevant sections contained in the lease.

A few weeks later, Mr. McWherter filed a First Amended Answer of Carl McWherter Individually and As General Manager of Texas Bentonite in which he challenged Jeanette Halls status as general manager of Texas Bentonite and her capacity to answer or defend this lawsuit on behalf of Texas Bentonite.[4] A review of the record indicates that the trial court never made a ruling on this issue. It appears however, that Mr. McWherter decided not pursue such issue as is reflected in his filing of a Notice To Withdraw Verified Motion To Show Authority To Roy Ferguson to act as attorney for Texas Bentonite.

On February 21, 2002, Texas Bentonite filed a First Amended Answer and Cross-dClaims, and Third Party Claims. The third-party claims were later nonsuited, leaving only the cross claims against Mr. McWherter. Texas Bentonite alleged that Mr. McWherter had breached his fiduciary duty and duty of care, had misappropriated corporate assets, had usurped the corporate opportunity, and it raised claims of conspiracy. Texas Bentonite further requested contribution and indemnification in the event that it is held liable for any claims made in this lawsuit or any other lawsuit. On December 12, 2003, the trial court entered an order realigning the par-

ties, making Texas Bentonite the plaintiff and Mr. McWherter the defendant. According to Agua Frios representation in its brief, that case, Texas Bentonite L.C. v. Carl McWherter, was severed from the instant case and remains pending.

On November 15, 2001, the trial court entered an order granting Agua Frios motion for partial summary judgment.[5] On July 15, 2003, the trial court entered an order granting Agua Frios motion to sever the partial summary judgment between itself and Texas Bentonite from the rest of the lawsuit.[6] Then, on July 16, 2003, Agua Frio filed a Notice of Nonsuit, nonsuiting Texas Bentonite, L.C., McWherter, John Doe # 1, and John Doe # 2 of all claims unresolved by the Order on Summary Judgment. Thereafter, Mr. McWherter filed a motion for new trial, which was denied by operation of law. Mr. McWherter then filed a notice of appeal stating that he is appealing from the Summary Judgment and Order Granting Plaintiffs Motion to Sever....

▉ Mr. McWherter brings forth three issues on appeal. In response, Agua Frio claims that Mr. McWherter lacks standing to bring this appeal. Agua Frio argues that Mr. McWherter was not a party to the partial summary judgment and, as a result of the nonsuit, he is no longer even a defendant in the original action brought by Agua Frio. The only

---

4. Apparently, there was a meeting on January 27, 2001, where Mr. McWherter was removed as general manager and replaced by Jeanette Hall.

5. The record indicates that the order was not signed until October 7, 2002.

6. The order reads as follows:

Came on for consideration the AGUA FRIO RANCHS Motion to Sever the Order Granting Plaintiffs Motion for Partial Summary Judgment as between Plaintiff and

Defendants in this cause. The Court finds that granting Plaintiffs Motion for Partial Summary Judgment decreed that the lease between Plaintiff and Defendant TEXAS BENTONITE, L.C. as successor in interest to B.P. McKinney was terminated and that severance is appropriate; accordingly,

It is ORDERED that the Partial Summary Judgment as between Plaintiff and Defendants is severed, the judgment as between Plaintiff and Defendants remains in full force and effect and, therefore, becomes a final judgment.

case to which Mr. McWherter is a party, is the claim asserted against him by Texas Bentonite. After reviewing the record, we stand in agreement with Agua Frio.

 A summary judgment that does not dispose of all issues and parties is interlocutory and may not be appealed absent statutory authority permitting an interlocutory appeal. *See Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex. 1985)(orig. proceeding); *Schlipf v. Exxon Corp.,* 644 S.W.2d 453, 454 (Tex. 1982)(Opin. on reh'g). Alternatively, the trial judge may sign an order severing a party, cause of action, or issue, thereby rendering an otherwise interlocutory summary judgment final. *See Martinez v. Humble Sand & Gravel, Inc.,* 875 S.W.2d 311, 312 (Tex.1994); *Hood v. Amarillo Nat'l Bank,* 815 S.W.2d 545, 547 (Tex. 1991); *Schlipf,* 644 S.W.2d at 454. An order granting a severance is effective when signed, regardless of whether the district clerk creates a separate physical file with a different cause number. *McRoberts v. Ryals,* 863 S.W.2d 450, 452-53 (Tex.1993). Following such a severance, the judgment becomes final and may be appealed without a separate physical file or different number. *See Martinez,* 875 S.W.2d at 313; *McRoberts,* 863 S.W.2d at 453.

In this case, the partial summary judgment granted by the trial court became a final appealable order with the signing of the severance order by the trial court. The only question is whether Mr. McWherter is entitled to bring an appeal from that judgment.

 As a general rule of Texas law, to have standing a plaintiff must demonstrate an interest in a conflict distinct from that of the general public, such that the defendants actions have caused the plaintiff some particular injury. *See Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984). A party must show that its interest has been prejudiced before it has standing to appeal. *Gorman v. Gorman,* 966 S.W.2d 858, 864 (Tex.App.-Houston [1st Dist.] 1998, pet. denied.) An appealing party cannot complain of errors that do not injuriously affect its rights or that merely affect the rights of others. *See Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 150 (Tex.1982); *Hanna v. Godwin,* 876 S.W.2d 454, 457 & n. 5 (Tex.App.-El Paso 1994, no writ)(footnote lists other cases reflecting this rule). A party of record is normally entitled to appeal, however the parties own interest must be prejudiced before it has standing to appeal. *Reynolds v. Reynolds,* 860 S.W.2d 568, 570 (Tex.App.-Dallas 1993, writ denied). Appellant bears the burden of making a prima facie showing of prejudice. *Gorman,* 966 S.W.2d at 864.

 Mr. McWherter fails to demonstrate how his interests were prejudiced by the granting of the summary judgment filed by Agua Frio solely against Texas Bentonite. The general rule is that only the parties to a contract have the right to complain of a breach thereof. *Tennessee Gas Pipeline Co. v. Lenape Resources Corp.,* 870 S.W.2d 286, 295 (Tex.App.-San Antonio 1993), *affd in part and revd in part on other grounds,* 925 S.W.2d 565 (Tex.1996). In this case, Mr. McWhether was not a party to the lease at issue. At the hearing on the motion for partial summary judgment, Agua Frio made it clear to the court that the only thing it was asking for was a cancellation of the lease entered into by itself and Texas Bentonite. It did not seek any judgment against Mr. McWherter.

The language of the order granting partial summary judgment reads as follows:

On this the 15 day of November, 2001 came to be considered Plaintiffs Motion

for Partial Summary Judgment. After hearing argument of counsel and considering all evidence before the Court, it is ORDERED that the Motion be GRANTED.

It is therefore, ORDERED, ADJUDGED AND DECREED that the September 17, 1987 lease between The Agua Frio Ranch and Texas Bentonite, L.C. as successor in interest to B.P. McKinney, is terminated.

All relief not granted herein is hereby denied.

From this language, it is clear the order granting partial summary judgment merely terminated the lease between Texas Bentonite and Agua Frio. The granting of the partial summary judgment did not extend or assign liability to Mr. McWherther for such termination. The only party who had summary judgment granted against it was Texas Bentonite.

Texas Bentonite did not file an appeal from the order granting partial summary judgment in favor of Agua Frio. At the time partial summary judgment was granted, Texas Bentonite had filed cross-claims against Mr. McWherther for breach of fiduciary duty, mismanagement of the corporation, usurpation of the corporate opportunity, and misappropriation of assets. The ruling that the lease was terminated, did not, *per se*, make Mr. McWherther liable to Texas Bentonite. *See Gorman*, 966 S.W.2d at 866. We therefore find that Mr. McWherther lacks standing to appeal the partial summary judgment granted against Texas Bentonite.

Because Mr. McWherter lacks standing to appeal the summary judgment granted to Agua Frio, we may not consider the issues he seeks to raise.

We dismiss the appeal.