08-24-00327-CV

ACCEPTED
08-24-00327-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
10/30/2024 12:27 PM
ELIZABETH G. FLORES
CLERK

**No. 08-24-00327-CV**

**IN THE EIGHTH COURT OF APPEALS
EL PASO, TEXAS**

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS
10/30/2024 12:27:53 PM
ELIZABETH G. FLORES
Clerk

**IN RE TROY S. POE TRUST,**

***Richard C. Poe, II, Relator.***

Original Proceeding
from the Probate Court No 1, El Paso, County, Texas
Cause No. 2016-CPR00308

**RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

Joseph L. Hood, Jr.
State Bar No. 09943250
hood@windlehood.com
WINDLE HOOD NORTON
BRITTAIN & JAY, LLP
201 East Main, Suite 1350
El Paso, Texas 79901
Telephone: (915) 545-4900
Facsimile:  (915) 545-4911

Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Rachel A. Ekery
State Bar No. 00787424
rekery@adjtlaw.com
Nicholas Bacarisse
State Bar No. 24073872
nbacarisse@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300
Facsimile:  (512) 482-9303

**ATTORNEYS FOR REAL PARTIES IN INTEREST ANTHONY E. BOCK
AND KELLIE MONTICELLI**

**Oral Argument Requested**

TABLE OF CONTENTS

Index of Authorities ....................................................................................... ii

Record References and Abbreviations.............................................................vi

Statement of the Case.................................................................................... vii

Statement of Jurisdiction...............................................................................ix

Issues Presented .............................................................................................x

Reasons to Deny Mandamus...........................................................................1

Statement of Facts ..........................................................................................4

Argument........................................................................................................12

I.      The trial court never lost jurisdiction over the severed Administration
        Case.......................................................................................................13

II.     Richard's contrary arguments defy logic. .........................................17

        A.      The relevant inquiry is whether the trial court had jurisdiction
                over the Administration Case, not when it lost plenary power in
                the Modification Case. ...........................................................17

        B.      The orders Richard challenges were issued in the
                Administration Case, not the Modification Case. .............22

III.    Richard's approach, moored in discredited authority, involves a
        purported error that prejudiced no one. ............................................24

IV.     Richard's unjustified delay, his affirmative invocation of the trial
        court's jurisdiction, and the parties' ensuing reliance on the summary-
        judgment order require denial of relief...............................................29

Conclusion and Prayer ..................................................................................31

52.3(j) Certification.......................................................................................33

Certificate of Service .....................................................................................34

Certificate of Compliance ..............................................................................35

Appendix

# INDEX OF AUTHORITIES

## Cases

*Beckham Grp., P.C. v. Snyder*,
   315 S.W.3d 244 (Tex. App.—Dallas 2010, no pet.) ..........................................12

*Bigham v. Dempster*,
   901 S.W.2d 424 (Tex. 1995) (orig. proceeding) ................................................17

*Burns v. Bishop*,
   48 S.W.3d 459 (Tex. App.—Houston [14th Dist.] 2001, no pet.) .....................14

*Castro v. The Inland Sea, Inc.*,
   No. 08-15-00077-CV, 2015 WL 2374283 (Tex. App.—El Paso
   May 15, 2015, no pet.) (mem. op.) ...................................................................13

*Chen v. Razberi Techs., Inc.*,
   645 S.W.3d 773 (Tex. 2022) ...........................................................................24

*In re E.R.*,
   385 S.W.3d 552 (Tex. 2012) .......................................................................30, 31

*In re Est. of Cougot*,
   No. 08-22-00007-CV, 2022 WL 2866012 (Tex. App.—El Paso
   July 21, 2022, pet. denied) (mem. op.) ............................................................29

*F.F.P. Operating Partners, L.P. v. Duenez*,
   237 S.W.3d 680 (Tex. 2007) ...........................................................................28

*Finlan v. Peavy*,
   205 S.W.3d 647 (Tex. App.—Waco 2006, no pet.) ..........................................13

*In re Fowler*,
   No. 01-12-00632, 2013 WL 2246055 (Tex. App.—Houston [1st
   Dist.] May 21, 2013, orig. proceeding) (per curiam) (mem. op.)......................14

*Godoy v. Wells Fargo Bank, N.A.*,
   575 S.W.3d 531 (Tex. 2019) ...........................................................................24

*Harry v. Univ. of Tex. Sys.*,
   878 S.W.2d 342 (Tex. App.—El Paso 1994, no writ).......................................25

*JDH Pac., Inc. v. Precision-Hayes Int'l, Inc.*,
659 S.W.3d 449 (Tex. 2022) ..................................................................24

*Jones v. Tummel*,
No. 13-13-00668-CV, 2014 WL 2937011 (Tex. App.—Corpus
Christi June 26, 2014, no pet.) (mem. op.) ........................................19

*Law Offices of Robert D. Wilson v. Tex. Univest-Frisco, Ltd.*,
291 S.W.3d 110 (Tex. App.—Dallas 2009, no pet.) ..........................21

*Leach v. Brown*,
292 S.W.2d 329 (Tex. 1956) .................................................................27

*Leal v. City of Rosenberg*,
17 S.W.3d 385 (Tex. App.—Amarillo 2000, no pet.) .........................20

*Madeksho v. Abraham, Watkins, Nichols & Friend*,
112 S.W.3d 679 (Tex. App.—Houston [14th Dist.] 2003, pet.
denied)....................................................................................................14

*Marin Real Est. Partners, L.P. v. Vogt*,
373 S.W.3d 57 (Tex. App.—San Antonio 2011, no pet.) .............15, 16

*In re Marquez*,
650 S.W.3d 95 (Tex. App.—El Paso 2021, orig. proceeding)............30

*Matlock v. McCormick*,
948 S.W.2d 308 (Tex. App.—San Antonio 1997, no writ)................27

*McRoberts v. Ryals*,
863 S.W.2d 450 (Tex. 1993) .......................................................*passim*

*McWherter v. Agua Frio Ranch*,
224 S.W.3d 285 (Tex. App.—El Paso 2005, no pet.) .......................15

*Mitschke v. Borromeo*,
645 S.W.3d 251 (Tex. 2022) ....................................................14, 25, 27

*Mueller v. Saravia*,
826 S.W.2d 608 (Tex. 1992) .................................................................27

*Panatrol Corp. v. Emerson Elec. Co.*,
147 S.W.3d 518 (Tex. App.—San Antonio 2004, pet. denied)..........13

iii

*Paselk v. Rabun*,
 293 S.W.3d 600 (Tex. App.—Texarkana 2009, pet. denied)..............................19

*Philbrook v. Berry*,
 683 S.W.2d 378 (Tex. 1985) (orig. proceeding) (per curiam) ......................25, 26

*In re R.D.*,
 304 S.W.3d 368 (Tex. 2010) (per curiam) ........................................................24

*Rivercenter Assocs. v. Rivera*,
 858 S.W.2d 366 (Tex. 1993) .............................................................................29

*Ryals v. Canales*,
 748 S.W.2d 601 (Tex. App.—Dallas 1988, orig. proceeding)...........................14

*Ryland Enter., Inc. v. Weatherspoon*,
 355 S.W.3d 664 (Tex. 2011) (per curiam) .........................................................24

*Spence v. State Nat'l Bank of El Paso*,
 5 S.W.2d 754 (Tex. Comm'n App. 1928, judgm't affirmed)..............................31

*Surgitek v. Abel*,
 997 S.W.2 598, 601 (Tex. 1999) .......................................................................24

*Tanner v. Karnavas*,
 86 S.W.3d 737 (Tex. App.—Dallas 2002, pet. denied).....................................13

*In re Troy S. Poe Trust*,
 673 S.W.3d 395 (Tex. App.—El Paso July 28, 2023, pet. denied).................4, 6

*Van Dyke v. Boswell, O'Toole, Davis & Pickering*,
 697 S.W.2d 381 (Tex. 1985) ........................................................................12, 20

*Verburgt v. Dorner*,
 959 S.W.2d 615 (Tex. 1997) .............................................................................24

**Statutes & Rules**

TEX. CIV. PRAC. & REM. CODE § 37.005.........................................................8, 22

TEX. R. CIV. P. 23 ...............................................................................................14

TEX. R. CIV. P. 301 .............................................................................................16

**Other Authorities**

BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 561 ..............................................21

RESTATEMENT (SECOND) OF JUDGMENTS § 66 (1982) .......................................30, 31

RESTATEMENT (SECOND) OF JUDGMENTS § 69 (1982) ..............................................30

## RECORD REFERENCES AND ABBREVIATIONS

References to the Mandamus Record are in the form "MR[Page#]."

References to the Supplemental Mandamus Record are in the form "SuppMR[Page#]."

References to "App. __" are to material appended hereto.

"*Poe Trust II*" refers to this Court's opinion following remand in the trust-modification dispute, *In re Troy S. Poe Trust*, 673 S.W.3d 395 (Tex. App.—El Paso July 28, 2023, pet. denied).

STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case:* | Trust-administration dispute. The underlying proceeding originated when one of the trustees, Real Party in Interest Anthony Bock, sought a trust modification under Trust Code section 112.054. MR1–5. Another trustee, Relator Richard C. Poe, II, brought a breach-of-trust counterclaim against Bock, MR28, prompting Bock to ask the court to ratify prior actions he had taken as trustee, MR10. |
| | The modification case was tried to the bench. MR36. The trial court modified the trust and severed the ratification and breach-of-trust claims, making the modification order final. MR40. Despite the severance, the clerk did not assign a new cause number to the severed claims. Richard appealed the modification order. MR42. |
| | While the appeal was pending, another trust-administration matter arose involving the payment of trust income. Richard and Real Party in Interest Troy S. Poe, the trust's beneficiary, filed competing summary-judgment motions on that issue. ***In 2021***, the trial court, in an interlocutory order, granted Troy's motion and denied Richard's. App. 1; MR189–90. |
| | Two and a half years later, Richard moved to set aside that order, arguing that, despite the severance, the trial court's plenary power lapsed in 2018 because no new cause number had been assigned after severance. The trial court denied that motion and Richard's subsequent request for clarification and reconsideration. Apps. 2–3; MR474, 627. |
| *Respondent:* | Hon. Sandee Bryan Marion, sitting by assignment, Probate Court No. 1, El Paso County[1] |

---

[1] Judge Marion was assigned to preside over this case on January 10, 2024, after Judge Steve M. King became unavailable to do so. SuppMR223–24. Judge Marion began her judicial career presiding over Bexar County Probate Court No. 2. *See* EXPLORING OUR PAST: HISTORIES OF ST. MARY'S SCH. OF L., *Chief Justice Sandee Bryan Marion*, https://stmupublichistory.org/law/?page_id=468 (last visited Oct. 29, 2024). She later served as

| | |
|---|---|
| *Respondent's Action:* | Granted Real Party in Interest's summary-judgment motion and denied Relator's; denied Relator's motion to set aside filings and orders; denied Relator's motion for clarification or reconsideration. Apps. 1–3; MR189–90, 474, 627. |

the Chief Justice of the Fourth Court of Appeals. *Id*. She has also served as a visiting justice on this Court.

## STATEMENT OF JURISDICTION

This Court has mandamus jurisdiction pursuant to Article 5 of the Texas Constitution, Section 22.221(a) and (b) of the Government Code, and Texas Rule of Appellate Procedure 52.1.

**ISSUES PRESENTED**

1.    Six-and-a-half years ago, the trial court signed a final judgment in an underlying trust-modification dispute. It severed from that judgment pending claims for ratification and breach-of-trust. A severance takes effect immediately and splits the proceeding into two separate cases, regardless of whether a new cause number is ever assigned. The severance thus created two cases: the modification case, which Richard appealed; and the administration case, which remained pending in the trial court. Assigning a new cause number is a ministerial, clerical task without jurisdictional significance. Did the trial court's plenary power over the *administration case* lapse, making its orders in that case void, 105 days after the *modification judgment* was signed, simply because a clerk did not affix a new number to the administration case?

2.    Do the relator's invocation of the trial court's jurisdiction, his inexplicable delay in seeking relief, and the parties' substantial reliance interests require the denial of relief?

## REASONS TO DENY MANDAMUS

The Supreme Court and this Court have been exceptionally clear: when possible, the resolution of cases should turn on substance, not meaningless procedural technicalities. Richard's mandamus petition represents a direct challenge to that vital principle.

Richard contends that the trial court's plenary power lapsed in 2018, shortly after it signed a final judgment modifying the trust. But that final judgment also severed pending claims for ratification and breach of trust. Although Richard acknowledges the severance, he refuses to accord it any legal effect on the ground that the clerk did not stamp a new cause number on the severed claims. Under Richard's view, the clerical oversight deprived the trial court of the power to preside over the severed case.

Richard spends pages arguing that the modification order was a final judgment. No one contests that issue. Nor is there any dispute about how to calculate the limits of a trial court's plenary power after a final judgment. But contrary to Richard's central point, resolving this case is not "simply a matter of math." Pet. 1. Instead, this case turns on whether a trial court that has jurisdiction over the parties and the subject matter and has presided over the case for years, deciding questions large and small, is stripped of power because the numbers at the top of the parties' pleadings and the court's orders in a severed case bear the original

cause number. On that question of procedural form over critical substance, Richard's petition is almost silent.

Ample and binding precedent establishes that the severance is immediately effective, regardless of when, or even if, a new cause number is ever stamped on the severed case. The failure to assign a new cause number—a ministerial, clerical task—has no jurisdictional significance. If it did, the innocent transposition of numbers in a cause, and the revelation of such a trivial mistake years or decades after a court issues its decrees, could upend both the law and the parties' reliance on it. But those grave consequences are not implicated because a severance can result in two cases under a single cause number—which is precisely what happened here.

The trial court's final judgment in the underlying trust-modification case severed the pending ratification and breach-of trust claims, which Real Parties refer to as the "administration" case. The modification case resulted in a final judgment that Richard appealed; the administration case remains live, and the trial court never lost plenary power over the latter.

All of the orders about which Richard complains in this proceeding occurred in the administration case—they were distinct from the modification case on appeal. There has been no final judgment in the ongoing administration case. Thus, not only has the trial court's plenary power in that case not expired, the clock has not even started ticking. The trial court thus had the power to decide the summary judgment

2

motions (including the one Richard asked the trial court to grant) in the administration case after the modification judgment was appealed. There is no basis for mandamus relief.

This is especially so given Richard's affirmative invocation of the trial court's jurisdiction, his years-long delay in seeking relief, and the parties' reliance on the summary-judgment order in the interim. Each of these grounds provides an independent basis for rejecting Richard's form-over-substance plea for dispensing with the trial court's valid orders.

Richard's petition should be denied.

## STATEMENT OF FACTS

This Court is well-acquainted with the basic facts underlying this dispute. *See generally Poe Trust II*, 673 S.W.3d at 400. El Paso businessman Dick Poe created a trust—the Care Trust—to provide for his son Troy, who has cerebral palsy and requires round-the-clock care. *Id*. Troy is the Care Trust's sole income beneficiary. MR15. The Care Trust requires that the trustees "*shall pay* [the Trust's] net income to TROY" or "for the benefit of" Troy "at least quarter-annually." *Id*. (emphasis added). Dick's other son, Relator Richard C. Poe, II, is the Care Trust's remainder beneficiary and will inherit its corpus upon Troy's death.[2] *Id*.; *see also* MR7.

Richard is also a trustee, a role that, during Dick's life, Richard shared with Dick and Real Party in Interest Anthony Bock. *Poe Trust II*, 673 S.W.3d at 400. However, in practice, Dick administered the Care Trust unilaterally. *Id*. After Dick died in 2015, the relationship between Bock and Richard deteriorated, and they were unable to agree on various issues relating to the Care Trust's administration. *Id*.

**The parties litigate the Care Trust modification dispute, and the trial court severs the modification judgment from the other issues in the litigation.**

Bock petitioned to modify the Care Trust. MR6–26. He asked the court to name a third trustee and declare that trust decisions be governed by majority vote. MR8. Bock also requested that the trial court ratify his past actions as trustee.

---

[2] The Care Trust has a substantial corpus, and no principal has ever been spent. MR34.

MR10.  Troy, through his attorney ad litem, joined Bock's modification request. Richard opposed it and counterclaimed for breach of trust.  MR27–32.

The modification was tried to the bench.  MR33.  The trial court concluded that changed circumstances made the Care Trust's purposes impossible to fulfill and that modification would further the trust's purposes.  MR34.  The court appointed Kellie Monticelli as a third trustee and decreed that the trustees' decisions be authorized by majority vote.  MR38–39.

The trial court simultaneously severed the Modification Case from the ratification and breach-of-trust claims (the Administration Case), creating a final judgment in the Modification Case:

> The Court hereby severs Petitioner's claim to ratify the decisions made by him without Respondent's concurrence and Respondent's claims against Petitioner for an accounting.  This is a final, appealable judgment.
>
> All costs of the Court having been paid, no execution shall issue.
>
> SIGNED this ___13___ day of February, 2018.
>
> _____
> JUDGE

MR40.  While this severance was immediately effective, the trial court clerk did not administratively assign the still-pending ratification and breach-of-trust claims to a new cause number.  Instead, following the severance, both the final Modification

5

Case and the live Administration Case existed side by side under the old cause number.

Richard appealed the judgment in the Modification Case, launching the courts and parties on a six-and-a-half year journey—a journey that recently ended with the Supreme Court's denial of Richard's petition for review.[3] *See* https://tinyurl.com/b7pntczx. That appeal was separate from with the Administration Case, which remained pending in the trial court. *See, e.g.*, *Poe Trust II*, 673 S.W.3d at 401 (noting that "[t]he probate court severed the remaining claims and set Richard's breach-of-trust counterclaim for a jury trial").

**Troy's rights are partially restored.**

The trust conflicts exacted a toll on Troy. *Id.* at 413, 417 (noting the litigation's "negative impact on Troy's well-being" and the evidence that he was unable "to engage in the activities to which he had become accustomed"). He and Richard have no meaningful relationship, and Troy is frustrated by the financial constraints Richard, as trustee, has attempted to impose on him and his caregivers.[4] SuppMR142. Nevertheless, Troy's cognitive abilities continued to improve, especially as he emerged from his grief following Dick's death. *Id.*

---

[3]The Supreme Court recently denied Richard's motion for rehearing. https://tinyurl.com/3vn2sn63.

[4] Richard and Troy have seen each other just once since Dick's funeral in 2015. SuppMR141–42.

Although Troy was under a guardianship, Troy's guardian ad litem and attorney ad litem believed that Troy had the capacity to execute a statutory durable power of attorney and a will and that his assets (including Care Trust income) could be placed in a management trust supervised by agents Troy appointed. *Id*. She explained this to Troy, who was pleased at the prospect of gaining a measure of control over his money, assisted by trusted advisers that he selected. *Id.* Dr. Cynthia Rivera, a psychiatrist, examined Troy and determined that he had the capacity to execute these documents. SuppMR143. Troy, though his guardian and attorney ad litem, applied (in a separate guardianship case) for a partial restoration of his rights. *Id*.; *see also* SuppMR155–61. Dr. Rivera and other witnesses testified at that hearing, and the court interviewed Troy in camera. SuppMR143. The court, concluding that Troy had the requisite capacity, partially restored his rights, directing him to create a Management Trust governing his assets. *Id*.; MR56–59. As the court noted, "this is Troy's money and he should have control over it." SuppMR144.

**Richard refuses to authorize income distributions to Troy's Management Trust, necessitating a return to court.**

Richard, apparently displeased with Troy's attainment of agency over his assets, refused to authorize income distributions from the Care Trust to Troy's Management Trust. MR50. Richard's refusal defied the Care Trust's requirement that the trustees "shall pay" trust income to Troy or for his benefit at least quarterly.

7

*Id.* And even though the Modification Case's judgment had not been suspended pending appeal, Richard demanded that Monticelli not act as a co-trustee while that appeal was pending. *Id.*

Bock and Monticelli were thus forced to seek—within the still-pending Administration Case—a judicial declaration that the income distribution was due to Troy and that Bock was authorized to pay the requisite (past and future) distributions to Troy or his Management Trust. MR45–73; *see also* TEX. CIV. PRAC. & REM. CODE § 37.005 (permitting a trustee to seek a declaration and authorizing the court "to determine any question arising in the administration of the trust or estate"). Troy petitioned for similar relief and sought summary judgment on his claims. MR74–84, 121–73.

Richard filed a counter summary-judgment motion. MR174–88. He sought a declaration that "the trust need not distribute any of its net income to a legal representative of Troy." MR175. Richard sought discovery and filed a motion to compel. SuppMR4–80. Bock and Monticelli resisted discovery, as the requested information related solely to Troy's Management Trust, which was created pursuant to a valid court order in the guardianship case. They contended that Richard's discovery was an impermissible collateral attack on that order and was not relevant to the trustees' obligation to distribute income quarterly. SuppMR203–04.

8

The trial court granted Troy's summary-judgment motion and denied Richard's.[5] MR190. The trial court declared that distribution of income to Troy at least quarterly was "mandatory" under the Care Trust. MR189. The court ordered that the trustees distribute net income to Troy or for his benefit, beginning with the second quarter of 2019 and continuing until Troy's death. MR190 (requiring that past due amounts be paid within 30 days and future amounts be paid within 30 days after the end of each quarter). The order, signed on January 19, 2021, remains in effect today. *Id*.

Two and a half years later (and a year before he would seek mandamus relief), Richard, represented by new counsel, filed two motions. First, he moved to effectuate the severance. MR191–203. He pointed out that the trial court had severed the Administration Case from the Modification Case years earlier but that no new cause number had been assigned. He urged that the "severance requires that this Court retroactively assign the Ratification Claims and the Counterclaim to a new cause number as of . . . the date this Court entered the Modification Order." MR193.

Second, four days later, he filed another motion, this time contending that the trial court actually lost plenary power over the trust proceedings in *2018*. He moved to set aside all filings and orders after that date because they bore the original cause

---

[5] This mooted Richard's motion to compel, which was never ruled on.

9

number. MR204–331. Richard alleged that although the trial court severed the ratification and breach-of-trust claims, the trial court "failed to timely establish a new cause number for the [severed] claims." MR204. According to Richard, that meant that "[t]hese pendent claims therefore remained trapped in" the Modification Case for which the trial court's plenary power expired, at the latest, 105 days after the trial court signed the final modification order. *Id.*, MR209. Thus, "all of the filings and orders entered in this case after June 28, 2018 are void." MR205.

Around the same time, the trial court signed an agreed order granting Richard's motion to effectuate the severance and directing the clerk to "establish a separate cause number by and between the parties in these proceedings and concerning the Troy S. Poe Trust, dated September 4, 2007." MR426. It also transferred the ratification and breach-of-trust claims to the new cause number, 2024CPR00079.

By the time of the hearing, Richard's position had changed again. He now returned to his position that the severance *was* effective, but only as to the ratification and breach-of-trust claims. He acknowledged that those claims remained live even though they remained under the original cause number. But he contended—without any authority—that any other filings must be invalid because they could only have been filed in the original, and not the severed, case. This was his reasoning:

> The severance happened in 2018 and it sent their claim to ratify and
> sent our counterclaim into this new severed case that didn't have a

10

cause number. And obviously anything that was filed after that couldn't have been put into the severed case. You only put into a severed case whatever was there at the time of the severance. And so if they kept filing stuff in the original cause number, that's not filed in the severed case.

MR442–43. The trial court denied Richard's motion to set aside all pleadings and orders after May 29, 2018, which is 105 days after the severance. MR474.

Richard moved for clarification or, alternatively, for reconsideration of his summary-judgment motion in the original cause number. MR475–541. He asked the court to specify whether it denied his motion to set aside because it believed it continued to have jurisdiction over the case after the severance, or whether the court believed the motion to set aside was correct but that the court lacked jurisdiction to rule on it. MR480. Alternatively, Richard asked the court to reconsider its summary-judgment order requiring payment of trust income to Troy. Richard alleged, for the first time (and directly contrary to his theory in his summary-judgment motion), that the Care Trust was ambiguous. MR481; *see also* MR179; MR544. After a hearing (docketed under the new cause number), MR559–617, the trial court denied this motion too, MR627.

Richard contends the trial court abused its discretion and seeks mandamus relief from this Court ordering the trial court to set aside all orders after May 29, 2018, the day its plenary power purportedly lapsed. Pet. vii.

11

## ARGUMENT

Richard acknowledges that the judgment in the Modification Case severed from that single issue all other claims that were pending at that time (which Real Parties refer to as the Administration Case). Pet. 4. He also agrees that the severance was immediately effective. Pet. 15. He thus correctly observes that the severance split the case into two separate proceedings: (1) the Modification Case, which was finally adjudicated by the modification order; and (2) the Administration Case, which remained pending. Pet. 11; *see Van Dyke v. Boswell, O'Toole, Davis & Pickering*, 697 S.W.2d 381, 383 (Tex. 1985) (recognizing that a "severance splits a suit into two or more independent actions"); *Beckham Grp., P.C. v. Snyder*, 315 S.W.3d 244, 245 (Tex. App.—Dallas 2010, no pet.) (holding that severance resulted in "two separate lawsuits"). The ongoing trust-administration proceedings in the original cause number are distinct from the modification judgment that was appealed, and Richard does not contend otherwise.

Yet despite acknowledging the *fact* of severance, Richard insists the trial court was stripped of the power to decide issues related to the Care Trust's administration merely because those issues were decided under the same cause number in which the Modification Case judgment was rendered.

Richard is wrong. His position erroneously grants jurisdictional significance to the ministerial, clerical task of assigning a new cause number. His arguments also conflict with governing authority from this Court and the Supreme Court.

## I. The trial court never lost jurisdiction over the severed Administration Case.

"[A]n order granting a severance with a judgment in the cause ordered severed is effective when signed." *McRoberts v. Ryals*, 863 S.W.2d 450, 452–53 (Tex. 1993). That is true even "without the district clerk's creation of a separate physical file with a different cause number." *Id*. at 453; *Castro v. The Inland Sea, Inc.*, No. 08-15-00077-CV, 2015 WL 2374283, at *2 (Tex. App.—El Paso May 15, 2015, no pet.) (mem. op.) ("Typically, a severance order is effective when it is signed, regardless of whether the district clerk creates a separate physical file with a different cause number.").[6]

Thus, immediately upon the trial court's order granting a severance, there were two distinct cases pending under a single cause number: the Modification Case, which was final; and the Administration Case, which was active. The resolution of Richard's petition is thus straightforward. The summary-judgment orders that Richard challenges as void—none of which had anything to do with *modifying* the

---

[6] *Accord Finlan v. Peavy*, 205 S.W.3d 647, 651 (Tex. App.—Waco 2006, no pet.) (same); *Panatrol Corp. v. Emerson Elec. Co.*, 147 S.W.3d 518, 521 (Tex. App.—San Antonio 2004, pet. denied) (same); *Tanner v. Karnavas*, 86 S.W.3d 737, 743 (Tex. App.—Dallas 2002, pet. denied) (same).

Care Trust, the only issue the Modification Case's final judgment resolved—were filed in and decided under the pending Administration Case. Regardless of when the trial court lost plenary power over the Modification Case, it never lost jurisdiction over the Administration Case, which has yet to reach a final judgment. The trial court therefore had jurisdiction—within the Administration Case—to act.

It does not matter that the challenged orders in the *severed* Administration Case were issued under the same cause number under which the trial court had rendered final judgment in the *distinct* Modification Case. Cause numbers have no jurisdictional significance. They are merely administrative tools that court clerks use to organize pending cases in their docketing systems. *See* TEX. R. CIV. P. 23 ("It shall be the duty of the clerk to designate the suits by regular consecutive numbers, called file numbers . . . ."); *see Ryals v. Canales*, 748 S.W.2d 601, 604 (Tex. App.—Dallas 1988, orig. proceeding) (describing the "purely ministerial clerical function of assigning the second cause number" after severance).[7] Thus, the Supreme Court

---

[7]*Accord Madeksho v. Abraham, Watkins, Nichols & Friend*, 112 S.W.3d 679, 689 n.56 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (referring to a clerks' failure to assign a new cause number "is an administrative error that does not affect the merits"); *Burns v. Bishop*, 48 S.W.3d 459, 461 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("We recognize that there can be but one judgment in a cause, but we regard the assignment of the number of a completed cause to a new dispute as an administrative error insignificant to the disposition of the merits."); *see also In re Fowler*, No. 01-12-00632, 2013 WL 2246055, at *2 (Tex. App.—Houston [1st Dist.] May 21, 2013, orig. proceeding) (per curiam) (mem. op.) (referring to a clerks' "ministerial duty to file and assign a case number"); *cf. Mitschke v. Borromeo*, 645 S.W.3d 251, 258–59 (Tex. 2022) (holding that new-trial motion extended plenary power even though it was filed in the wrong of two severed cases).

in *McRoberts* called it a "misconception" that there "must be a physically separate file and a different cause number for the 'severed' cause." 863 S.W.2d at 453 n.4.

In other words, the clerk's minor oversight in neglecting to separate the final Modification Case from the non-final Administration Case had no effect on the trial court's power and obligation to preside over the Administration Case—including by issuing declarations regarding the parties' duties with respect to the Care Trust. *See id.* (holding that judgment in severed case would have been "final and appealable, whether or not the clerk *ever* creates a physically separate file or assigns a new number to it"); *accord McWherter v. Agua Frio Ranch*, 224 S.W.3d 285, 290 (Tex. App.—El Paso 2005, no pet.) (holding that, following "severance, the judgment becomes final and may be appealed without a separate physical file or different number"). Richard cannot effectively distinguish these cases, nor does he cite others refuting their holdings.

The San Antonio Court of Appeals has rejected an argument almost identical to Richard's. *See Marin Real Est. Partners, L.P. v. Vogt*, 373 S.W.3d 57 (Tex. App.—San Antonio 2011, no pet.). In *Marin*, the trial court rendered a default judgment against one party and ordered it severed, but the trial court "failed to assign a separate docket number" to that severed case. *Id.* at 92. The court later rendered judgment against Marin, which Marin argued violated the one-judgment rule. *Id.*; *see* TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause

15

except where it is otherwise specially provided by law."). Quoting *McRoberts*'s statement that a severance is "effective immediately and the judgment final and appealable whether or not the clerk ever creates a physically separate file or assigns a new number," *McRoberts*, 863 S.W.2d at 453 n.4, the court explained:

> A severance divides a lawsuit into two or more separate and independent causes that may be resolved separately. When a severance is granted, the separated causes proceed to individual judgments—judgments that are separately final and appealable. In other words, after a severance, there are two separate causes resulting in two separate judgments. Accordingly, the "one judgment rule," which states "one final judgment shall be rendered in any cause" is not implicated because there are two causes with separate judgments.

*Marin*, 373 S.W.3d at 93–94 (citations omitted).

Likewise here, two cases existed after the severance order. The trial court's judgment in the Modification Case did not deprive the trial court of authority over the Administration Case, which could proceed as normal despite the clerk's oversight. The trial court therefore had jurisdiction and authority to preside over and rule upon the summary-judgment motions.

Because the trial court's orders were issued in the Administration Case, a case in which the court had jurisdiction over the subject matter and the parties, and in which no final judgment has ever been rendered nor plenary power lost, Richard's petition should be denied.

16

## II.     Richard's contrary arguments defy logic.

Richard's petition obscures the nature of the trial-court proceedings and conflates a cause number with a cause.  This makes it difficult to discern his argument—he seems to assert that the trial court lost what he calls "plenary power," even though the Administration Case has been, then and now, a live controversy for which no final judgment has been signed.  Richard's argument seems to be either that: (1) once a trial court loses plenary power over one case administratively assigned to a cause number, it loses jurisdiction to make *any* rulings in that cause number—even if another, non-final case is also assigned to that same cause number; or (2) this court is obliged to assume, against the cases addressing this subject and contrary to logic, that the summary-judgment motions were filed and decided in the final Modification Case rather than the pending Administration Case.

Both arguments rely on a pointless formalism that the Supreme Court has repeatedly rejected.

### A.     The relevant inquiry is whether the trial court had jurisdiction over the Administration Case, not when it lost plenary power in the Modification Case.

The Supreme Court has regularly condemned interpreting procedural rules in a way "that makes jurisdiction turn on whether a clerk performs a ministerial duty." *Bigham v. Dempster*, 901 S.W.2d 424, 431 (Tex. 1995) (orig. proceeding). Richard's view, however, is that where the clerk neglects to assign a new cause

number to a severed case, resulting in two cases pending under a single cause number, the clerk has effectively divested the trial court of jurisdiction over the second case after "plenary power" expires in the first—even though no final judgment has ever been sought, much less rendered, in the second. Richard summarized his view in the trial court: that the final judgment in the Modification Case left the claims in the Administration Case "trapped in the original proceedings," where they could be decided only while the trial court still had plenary power *in the Modification Case* "as permitted under Texas Rule of Civil Procedure 329b." MR204.

Richard's argument conflates the Modification Case and the cause number in which judgment on that case was rendered. *See, e.g.*, Pet. 11–12 ("[B]ecause the Modification Order, issued in Cause No. 2016-CPR00308, was a final appealable order, the trial court lost jurisdiction to continue to issue orders in Cause No. 2016-CPR00308 with the expiration of the trial court's plenary power and while Cause No. 2016-CPR00308 has and continues to be on appeal."). But as Real Parties have shown—and as *McRoberts* and *Marin* confirm—a severance can easily create two cases existing side-by-side under a single cause number. A court considering a situation like this one, therefore, should distinguish between the cases and the cause number to which they are administratively assigned. Richard's theory relies on an (unstated and unexplained) assumption that expiration of plenary power over one of

18

two cases assigned to a cause number deprives the court of power over *the cause number* rather than *the specific case in which judgment was rendered*.

No precedent ascribes such jurisdictional gravitas to cause numbers; indeed, all cases are to the contrary. *Marin* rejected an argument almost identical to Richard's, and substantial additional caselaw teaches that cause numbers do not determine whether a court has the power and obligation to preside over a case. Most often, this issue arises when a trial court severs out an interlocutory order to create a final judgment but fails to assign that judgment a new cause number. The question thus arises: Where does the would-be appellant file its motion for new trial and notice of appeal, given that the judgment has been severed into a non-existent cause number? Uniformly, the cases answer that both the trial court's jurisdiction (to consider a plenary-power extending motion) and the appellate court's jurisdiction (to consider the appeal) are invoked by filing the motion under the old cause number, even though a whole different case is *also* pending there. *E.g.*, *McRoberts*, 863 S.W.2d at 455 (explaining that, were it otherwise, a litigant would "face[] the impossible dilemma of having to timely file his motion for new trial under a nonexistent cause number").[8]

---

[8] *Accord Jones v. Tummel*, No. 13-13-00668-CV, 2014 WL 2937011, at *2 (Tex. App.—Corpus Christi June 26, 2014, no pet.) (mem. op.) ("We conclude that the appellants' motion for new trial, albeit filed under the main cause number instead of the severed cause number, extended the trial court's plenary power."); *Paselk v. Rabun*, 293 S.W.3d 600, 606 (Tex. App.—Texarkana 2009, pet. denied) (holding that motion for new trial filed under original cause number extended the time for perfecting appeal; "courts now hold that filing a timely motion for new trial under the wrong

19

Richard derides these authorities as inapposite because they "relate[] specifically to the *appeal of severed claims*, not the continued litigation in the trial court of the remaining claims." Pet. 16. *Marin*, of course, addresses exactly that point. More broadly, Richard's point of distinction is false. Nothing in *McRoberts* or similar cases can be read to suggest that the finality of one case deprives the trial court of power over the other simply because they are assigned the same cause number. On the contrary, the *McRoberts* Court—correcting the "misconception" that cause numbers had any relevance to the court of appeals' jurisdiction— explained that the severance was immediately effective, "and the judgment final and appealable, whether or not the clerk *ever* creates a physically separate files or assigns a new number to it." 863 S.W.2d at 453 n.4.

Neither precedent nor the procedural rules require—or even vaguely suggest—that the trial court's loss of plenary power over the Modification Case deprived it of plenary power over *other* cases pending under the same cause number. The court merely lost plenary power over the Modification Case itself. *See Van Dyke*, 697 S.W.2d at 383 (holding that severance results in two "independent actions," each "distinct" from the other). Because the "distinct," *id.*, Administration

---

cause number or in the wrong case evinces a bona fide attempt to invoke appellate jurisdiction when no one is confused about or mislead as to the judgment in question"); *Leal v. City of Rosenberg*, 17 S.W.3d 385, 386 (Tex. App.—Amarillo 2000, no pet.) (same).

Case indisputably remained pending during Richard's appeal of the Modification Case, nothing prevented the trial court from adjudicating those claims or any additional claims that accrued after the severance order was signed. *See Law Offices of Robert D. Wilson v. Tex. Univest-Frisco, Ltd.*, 291 S.W.3d 110, 113 (Tex. App.—Dallas 2009, no pet.) (recognizing that trial court's plenary power would not lapse in severed case until thirty days after final judgment was rendered in severed case).[9]

Clarifying the nature of the proceedings after severance exposes the inaccuracies undergirding every plank of Richard's mandamus petition. Richard claims that the parties continued to litigate "after a final judgment ha[d] been entered in" a *case* that was "currently the subject of a live and ongoing appeal" and that the trial court "rendered an order . . . while the *same cause* was pending before the Texas Supreme Court." Pet. 1. In truth, the only *case* before the Supreme Court was the Modification Case, while the summary-judgment order was entered in the Administration Case. Consequently, Richard's lengthy explanation of plenary-power doctrine misses the point. Because there has never been a final judgment *in*

---

[9] The power to adjudicate additional claims is part of the trial court's inherent power to administer, enforce, and interpret trusts. *See* BOGERT'S THE LAW OF TRUSTS AND TRUSTEES § 561 ("One of the important functions of the court of equity is to assist in the enforcement and administration of trusts, and hence to make such orders and decrees as will secure the carrying out of the creators' expressed intent, as to the dispositive provisions, as to the directions as to the methods to be used, and as to the details of administration to be followed by the trustee.").

*the Administration Case*, the relevant clock for the trial court's plenary power never even began ticking—much less has it expired.[10]

The trial court properly exercised its jurisdiction over the Administration Case. Richard can cite no authority to the contrary, and his petition should be denied.

**B.      The orders Richard challenges were issued in the Administration Case, not the Modification Case.**

Following severance, and despite the clerk's failure to assign a new cause number, Real Parties had a right to pursue, and the trial court had the power to adjudicate, the claims left pending in the Administration Case. It follows that Real Parties could, as in any other case, file new claims and seek new relief regarding the Care Trust's administration. Indeed, the declaratory judgment the Real Parties sought was pursuant to Civil Practice and Remedies Code section 37.005, which authorizes a declaration on "any question arising in *the administration of the trust*." TEX. CIV. PRAC. & REM. CODE § 37.005 (emphasis added); *see also* MR51, 82, 130. In the trial court, Richard nevertheless insisted that Real Parties' and Troy's summary-judgment motions had been presumptively filed in the Modification Case.

---

[10] For much the same reason, Richard's reliance on the principle that once an appeal is perfected, the trial court loses authority over the case, Pet. 13, does not help his position. The appeal of the Modification Case did not deprive the trial court of jurisdiction over the distinct, severed Administration Case.

22

As Richard's apparent abandonment of this argument suggests,[11] his position is another insignificant formalism presented for no reason other than depriving the trial court of jurisdiction. The trial court rendered a final judgment only in the Modification case, while severing the pending claims in the Administration Case. When Troy and Richard sought summary judgment, the Modification Case was long final and on appeal; the Administration Case was still pending.

Obviously, the motions were filed in the pending Administration Case, to which they directly related, rather than the final Modification Case, to which they were foreign. This is consistent with the actions of the parties and trial court. Everyone was aware that the Modification Case had been finally adjudicated and was on appeal. Everyone likewise understood that the summary-judgment motions were properly before the trial court, which retained jurisdiction over the Administration Case: Troy, who filed the motion; the trial court, which ruled on it; and even Richard, who filed his own summary-judgment motion and waited *years* before raising his jurisdictional objection.

Treating the orders as having been issued under the Administration Case—as they plainly were—is consistent with "the principle," from which the Supreme Court

---

[11] Richard's petition does not argue that Troy's summary-judgment motion was filed in, or that the trial court's disputed orders were issued in, the Modification Case rather than the Administration Case. Real Parties nevertheless address this argument in the event that Richard's arguments shift once again.

"has never wavered," that favors deciding cases on their merits, not disposing of the "based upon harmless procedural defects." *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997);[12] *see also Surgitek v. Abel*, 997 S.W.2 598, 601 (Tex. 1999) (noting that Texas courts are not "constrained by the form or caption of a pleading"). Richard's position, by contrast, asks this Court to assume—pointlessly and illogically—that the trial court and parties (including Richard himself) wasted their time drafting, filing, arguing, and adjudicating a live controversy in the Modification Case, where the court's power had expired, rather than the still-live Administration Case. Decades of Supreme Court precedent reject such reasoning.

## III. Richard's approach, moored in discredited authority, involves a purported error that prejudiced no one.

Richard's arguments hinge on an empty formalism that this Court and the Supreme Court have routinely condemned—doctrines that create needless jurisdictional doubt and are not required by the text of the governing statutes or rules. *E.g.*, *Godoy v. Wells Fargo Bank, N.A.*, 575 S.W.3d 531, 536–37 (Tex. 2019)

---

[12] *Accord JDH Pac., Inc. v. Precision-Hayes Int'l, Inc.*, 659 S.W.3d 449, 451 (Tex. 2022) (Young, J., concurring in denial of petition) ("[T]he age in which mere docketing errors carry fatal jurisdictional consequences has come to an end."); *Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 777 (Tex. 2022) ("[E]stablished Supreme Court precedent favors a merits-based disposition when supportable by a reasonable, yet liberal, construction of the appellate rules."); *Ryland Enter., Inc. v. Weatherspoon*, 355 S.W.3d 664, 665 (Tex. 2011) (per curiam) (explaining the Court's "principle of leniency" disfavoring jurisdictional error); *In re R.D.*, 304 S.W.3d 368, 370 (Tex. 2010) (per curiam) ("Where practical, the rules of civil procedure are to be given a liberal construction in order to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants under established principles of substantive law.").

("Whenever possible, we reject form-over-substance requirements that favor procedural machinations over reaching the merits of a case.") (internal quotation marks omitted); *Harry v. Univ. of Tex. Sys.*, 878 S.W.2d 342, 344 (Tex. App.—El Paso 1994, no writ) ("In keeping with the intent of our Rules of Civil Procedure, the objective is to obtain a just, fair, equitable, and impartial adjudication of the rights of litigants, not to elevate form over substance.").

Nowhere is that more evident than Richard's assertion in the trial court that "opposing counsel didn't effectuate getting a new cause number, didn't file this stuff in the severed cause number, and so for that reason, it's all void and the court should vacate it." MR441. Richard's authority for that argument was "the *Philbrook* case," in which "you had a severed cause, you had a cause number, a severed cause number. They filed a motion for new trial in the wrong one. . . . [The case] said that you then waived your right to appeal a default judgment. So where you file and what you file is important and it matters." *Id*.

Richard's reference was to *Philbrook v. Berry*,[13] a long discredited[14] decision that the Texas Supreme Court overruled two years *before* the hearing in this case. *Mitschke v. Borromeo*, 645 S.W.3d 251, 266 (Tex. 2022) ("*Philbrook v. Berry* is

---

[13] 683 S.W.2d 378, 379 (Tex. 1985) (orig. proceeding) (per curiam), *overruled by Mitschke v. Borromeo*, 645 S.W.3d 251, 266 (Tex. 2022).

[14] *Mitschke*, 645 S.W.3d at 259 ("We have repeatedly cast doubt on whether *Philbrook* was correctly decided . . . .") (internal quotation marks omitted).

25

overruled."). The Court did so precisely because "*Philbrook* was decided in an era full of snares and traps that could doom an appeal." *Id*. at 261 (recognizing that "Texas appellate practice had been mired in the nineteenth century's *in terrorem* philosophy, which has often caused harsh dispositions without regard to the merits of the cause" (internal quotation marks omitted)).

In *Philbrook*, a plaintiff obtained a default judgment against a defendant and then severed that judgment into a new cause with a final judgment. 683 S.W.2d at 379. When the defendant became aware of the default judgment, the defendant moved for a new trial, but it did so in the original, rather than the new cause. *Id*. The trial court nonetheless considered the motion as if filed in the severed cause and signed an order setting aside the default judgment. *Id*.. The Supreme Court reversed, applying reasoning that Richard advocates here: "[b]ecause the motion for new trial was filed in the wrong cause, it did not operate to extend the court's plenary power over its judgment." *Id*. Accordingly, the trial court's plenary power in the severed cause lapsed, and the trial judge lacked the power to set that judgment aside. *Id*.

In subsequent years, the Supreme Court repeatedly narrowed and distinguished *Philbrook*. *E.g.*, *McRoberts*, 863 S.W.2d at 453 n.4 (noting that the Court "ha[d] so frequently and expressly qualified *Philbrook*" even in 1993). In its opinion finally overruling *Philbrook*, the Supreme Court roundly condemned the idea that a timely new-trial motion that "suffer[ed] only from a docket-number error

26

in the context of severance that caused no prejudice to any party" meant that the appeal was untimely. *Mitschke*, 645 S.W.3d at 263. Instead, the Court held that a new-trial motion, under similar circumstances and despite its "non-prejudicial procedural defect," extended the time for perfecting the appeal. *Id*. at 266.[15]

The same rationale applies here. At best for Richard, the Administration Case "suffers only from a docket-number error in the context of severance that caused no prejudice to any party." *Id*. Nothing suggests that the filings were made under the original cause number to mislead anyone, and Richard presents no argument about how the filings and orders could possibly have prejudiced him. *Id*. Indeed, as in *Mitschke*, "[i]t seems implausible that prejudice [is] even possible under these facts," where Richard himself litigated (and sought affirmative relief) for years under that cause number and where he acknowledges both that the severed claims exist and that the severance was immediately effective. *Id*.[16]

---

[15] The Supreme Court follows a similar approach with regard to misnomer. When a party filed an "amended petition" in a case which had been dismissed a year earlier, the Supreme Court rejected the idea that the filing was a nullity: "Despite its misnomer and improper docketing, the petition was still sufficient to invoke the jurisdiction of the district court as that jurisdiction is defined by our Constitution and Statutes." *Leach v. Brown*, 292 S.W.2d 329, 331 (Tex. 1956).

[16] *See also, e.g., Mueller v. Saravia*, 826 S.W.2d 608, 609 (Tex. 1992) ("[A] party should not be punished for failing to comply with the terms of an order of severance ignored by [both the opposing party] and the court."); *cf. Matlock v. McCormick*, 948 S.W.2d 308, 310 (Tex. App.—San Antonio 1997, no writ) ("If there is no suggestion of confusion regarding which judgment the appellant appeals, the misnumbering should not defeat the appellate court's jurisdiction.").

This is especially true given Richard's requested relief of vacating all filings and orders dating back to 2018. Richard never explains what that relief would actually accomplish. The trial court has now assigned a new cause number to the severed claims, MR426, and Richard acknowledges that this assignment can be retroactive to 2018, MR193. Even assuming—against all precedent—that a jurisdictional defect existed, the trial court has now either fixed that supposed defect or could do so by transferring any filings and orders in question to that new cause number.

Even if more were required, the trial court has the undisputed power to adjudicate the trust-income issue; if it erred, it merely did so by entering orders under a wrong cause number. But that court has already rejected Richard's arguments on the merits. *See* MR189–90, MR627. Requiring the trial court to vacate its prior orders just to reissue them is pointless and wasteful. Mandating disgorgement of trust income paid in the interim, just to have it distributed again later, is similarly senseless.

Severance is aimed at "avoiding prejudice, doing justice, and increasing convenience." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007). Adopting Richard's position would violate all three of those principles.

**IV.** **Richard's unjustified delay, his affirmative invocation of the trial court's jurisdiction, and the parties' ensuing reliance on the summary-judgment order require denial of relief.**

Richard has been represented by counsel throughout these proceedings and knew about—indeed actively participated and sought affirmative relief from the court in—the filings under the original cause number. Most important, he knew about the January 2021 summary-judgment order. Yet he did not raise the trial court's purported lack of jurisdiction for two and a half years.[17] He did not pursue mandamus relief for almost four years. During that time, in reliance on and as mandated by that order, trust income has been paid to Troy or for his benefit quarterly. MR190, 548, 593.

Richard's delay, and the prejudice resulting from it, weigh in favor of denying mandamus. *See Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 375 (Tex. 1993) (recognizing that mandamus is controlled by equitable principles, including that it aids the diligent and not those who sleep on their rights); *In re Est. of Cougot*, No. 08-22-00007-CV, 2022 WL 2866012, at *5 n.3 (Tex. App.—El Paso July 21, 2022, pet. denied) (mem. op.) (recognizing that complaint about "a year-old discovery

---

[17] The only explanation Richard has offered for the delay is that his new lawyer was the first to recognize this jurisdictional "problem." *E.g.*, MR439 ("I was retained in the summer of 2023 . . . . I was scratching my head saying, 'How—this is on appeal, how did all this stuff get filed under the original cause number?' And that's what led me to file our motion in September of 2023."). That excuse is irrelevant; Richard's prior counsel would have had the same factual knowledge as Richard's new lawyers.

order" would "face major hurdles if brought as a mandamus" (citing *Rivercenter*)).

Indeed, this Court has held that laches barred mandamus relief involving purportedly void orders where the relator waited years to seek relief. *In re Marquez*, 650 S.W.3d 95, 97 (Tex. App.—El Paso 2021, orig. proceeding) (holding that laches barred relief from purportedly void orders, based on unexplained delay of 54 months and 23 months before seeking mandamus).

Moreover, even if Richard were correct that the trial court lost jurisdiction—and he is not—reliance interests require that the trial court's summary-judgment order remain in place. As the Restatement recognizes, even where there is an absence of subject-matter jurisdiction, "relief [from a judgment] should be denied in order to protect a justifiable interest of reliance on the judgment." RESTATEMENT (SECOND) OF JUDGMENTS § 69 (1982).

The Texas Supreme Court has applied a similar Restatement provision to a default judgment rendered without constitutionally adequate notice. *In re E.R.*, 385 S.W.3d 552, 567–70 (Tex. 2012). *E.R.* was a parental-rights termination case in which the mother was not properly served with process. *Id.* The Court held that despite the lack of proper service, the mother could not challenge the termination judgment if she had actual notice of the judgment, showed an intention to treat the judgment as valid, and "granting relief would impair another person's substantial interest of reliance on the judgment." *Id.* at 567 (citing RESTATEMENT (SECOND) OF

30

JUDGMENTS § 66 (1982)).  The Court explained the Restatement's position this way: "courts have used various explanations, including equity or estoppel, to justify the 'apparent anomaly of . . . according a "void" judgment the dispositive effect of a valid judgment,'" but these decisions can "be reconciled as reflecting the party's assent to the judgment."  *Id*. at 568 n. 30 (Tex. 2012) (quoting Restatement § 66, cmt. a)); *accord Spence v. State Nat'l Bank of El Paso*, 5 S.W.2d 754, 756 (Tex. Comm'n App. 1928, judgm't affirmed) ("[E]stoppel does not make valid the thing complained of, but merely closes the mouth of the complainant.").[18]

Even if Richard's jurisdictional theory were correct, his invocation of the court's jurisdiction and his years-long delay in seeking relief, during which the parties substantially relied on the judgment, justify denial of mandamus.

## CONCLUSION AND PRAYER

Real Parties in Interest Bock and Monticelli pray that this Court deny Richard's petition for writ of mandamus.  Bock and Monticelli pray for all other relief to which they may be entitled.

---

[18] This reflects the principle that a party, "having invoked the jurisdiction of the court," cannot "thereafter be permitted to question the validity of [its judgment] for the want of jurisdiction." *Spence*, 5 S.W.2d at 756.

Respectfully submitted,

/s/ *Wallace B. Jefferson*
Wallace B. Jefferson
State Bar No. 00000019
wjefferson@adjtlaw.com
Rachel A. Ekery
State Bar No. 00787424
rekery@adjtlaw.com
Nicholas Bacarisse
State Bar No. 24073872
nbacarisse@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
100 Congress Avenue, Suite 1450
Austin, Texas 78701-2709
Telephone: (512) 482-9300
Facsimile:  (512) 482-9303

Joseph L. Hood, Jr.
State Bar No. 09943250
hood@windlehood.com
WINDLE HOOD NORTON
BRITTAIN & JAY, LLP
201 East Main, Suite 1350
El Paso, Texas 79901
Telephone: (915) 545-4900
Facsimile:  (915) 545-4911

**ATTORNEYS FOR REAL PARTIES IN
INTEREST ANTHONY E. BOCK AND
KELLIE MONTICELLI**

32

**52.3(j) CERTIFICATION**

I certify that I have reviewed the factual statements contained in this Response to Petition for Writ of Mandamus and have concluded that every factual statement in the Response is supported by competent evidence included in the Appendix, Mandamus Record, or Supplemental Mandamus Record.

/s/ *Wallace B. Jefferson*
Wallace B. Jefferson

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2024, this response was served via electronic service through eFile.TXCourts.gov on all parties through counsel of record, listed below:

S. Anthony Safi
State Bar No. 17516800
safi@mgmsg.com
MOUNCE, GREEN, MYERS, SAFI,
PAXSON & GALATZAN, P.C.
P.O. Box 1977
El Paso, Texas 79950
Telephone: (915) 532-2000

**ATTORNEYS FOR REAL PARTY IN INTEREST TROY S. POE, NAMED BENEFICIARY OF THE TROY S. POE TRUST**

Karen Colon
State Bar No. 24074058
karen@kcolonlaw.com
KAREN COLON LAW PLLC
8732 Alameda Avenue, Suite B
El Paso, Texas 79907
Telephone: (915) 444-5003

**SUCCESSOR GUARDIAN AD LITEM AND ATTORNEY AD LITEM FOR REAL PARTY IN INTEREST TROY S. POE**

David F. Johnson
State Bar No. 24002357
dfjohnson@winstead.com
Stephen D. Taylor
State Bar No. 24056414
staylor@winstead.com
Jacob D. Crawley
State Bar No. 20137907
jcrawley@winstead.com
Kelly C. Martin
State Bar No. 24087240
kmartin@winstead.com
WINSTEAD PC
300 Throckmorton Street, Suite 1700
Fort Worth, Texas 76102
Telephone: (817) 420-8200
Facsimile: (817) 420-8201

**ATTORNEYS FOR RELATOR RICHARD C. POE, II**

Honorable Sandee Bryan Marion
Probate Court No. 1
500 East San Antonio, Suite 1201
El Paso, Texas 79901

**RESPONDENT**

/s/ *Rachel A. Ekery*
Rachel A. Ekery

34

## CERTIFICATE OF COMPLIANCE

Based on a word count run in Microsoft Word, this brief contains 7,590 words, excluding the portions of the brief exempt from the word count under Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Rachel A. Ekery*
Rachel A. Ekery

# INDEX OF APPENDICES

**Tab**      **Item**

1.           Order Granting Partial Summary Judgment (MR189–90)

2.           Order Denying Respondent's Motion to Set Aside Filings and Orders (MR474)

3.           Order Denying Motion for Clarification and/or Reconsideration of Order Granting Motion for Partial Summary Judgment (MR627)

# APPENDIX 1

| | | |
|---|---|---|
| IN THE MATTER | § | IN THE PROBATE COURT |
| | § | |
| | § | |
| OF THE | § | NUMBER ONE OF |
| | § | |
| | § | |
| TROY S. POE TRUST | § | EL PASO, TEXAS |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

On the Second day of December, 2020, came on to be heard the Motion for Partial Summary Judgment filed herein by TROY STEVEN POE ("Troy")and the Cross-Motion for Summary Judgment filed herein by RICHARD C. POE II ("Richard").

Having examined the pleadings, the Motions, Cross-Motions and Responses thereto as well as the summary judgment evidence admitted for consideration, and having heard the arguments of counsel, the Court hereby FINDS that there are no genuine issues of material fact and, pursuant to Tex. R. Civ. Proc. 166a, the following facts are hereby established as a matter of law:

1. <u>Jurisdiction, Venue</u>. All necessary parties to this action are before the Court. The Court has jurisdiction and venue of the subject matter and the parties.

2. <u>Declaration of Trust</u>. The TROY S. POE TRUST (the "Trust") was created by and continues to be governed by Declaration of Trust dated September 4, 2007 (whether as originally written or as modified by Order of this Court dated February 13, 2018, or as may be further modified by the Texas Supreme Court, the Eighth Court of Appeals of the State of Texas, or otherwise) by and between RICHARD C. POE ("Dick"), as Grantor, and Dick, Richard, and ANTHONY E. BOCK ("Tony"), as Trustees.

3. <u>Unambiguous</u>. The Declaration of Trust is unambiguous.

4. <u>Beneficiaries</u>. Troy is the sole beneficiary of the Trust during his lifetime. Upon Troy's death, the remainder beneficiaries are Dick's then living issue in equal shares per stirpes.

5. <u>Income</u>. Article First of the Declaration of Trust requires the Trustees to pay all net income of the Trust to or for the benefit of Troy at least quarter-annually for Troy's entire life.

6. <u>No Trustee Discretion</u>. Distribution of all net Trust income at least quarter-annually is mandatory under Article First of the Declaration of Trust. Therefore, the Trust is not a discretionary trust as it pertains to distributions of Trust income.

7. <u>Distributions to or for the Benefit of Troy</u>. Article Fourth of the Declaration of Trust details the various ways in which quarterly distributions of all net Trust income can be made to or for the benefit of Troy. Specifically, distributions may be: (a) paid to Troy; (b) applied directly to Troy's health, education, maintenance or support; (c) paid or distributed to Troy's caretaker, guardian, conservator, or any other legal representative; or (d) paid or distributed to the person with whom Troy resides.

8. <u>Troy's Death</u>. Upon Troy's death, the Trust will terminate at which time the principal and any accrued and unpaid income thereon for the last quarter of Troy's life shall be paid and distributed to

**R.189**

the remainder beneficiaries.

9. <u>Distributions of Income to Date</u>. The last quarterly distribution of all net Trust income to or for the benefit of Troy was made on June 26, 2019, for the first calendar quarter of 2019. Subsequently, Trustees have made partial distributions of net Trust income for the benefit of TROY but have failed to distribute all of the net income of the Trust.

It is therefore ORDERED, ADJUDGED AND DECREED that:

1. The Motion for Partial Summary Judgment filed by TROY STEVEN POE is GRANTED, and the Cross-Motion for Summary Judgment filed by RICHARD C. POE, II is DENIED;

2. The Trustees of the TROY S. POE TRUST shall make distributions of all net Trust income to or for the benefit of TROY at least quarter-annually, beginning with the second quarter of 2019, and continuing every quarter thereafter through the end of the last quarter prior to the death of TROY STEVEN POE;

3. Distributions for all quarters prior to the current calendar quarter shall be made within 30 days of this Order.

4. Distributions for the current quarter and all calendar quarters thereafter shall be made within 30 days after the last day of the calendar quarter.

5. Trustees shall not accumulate any net income after the end of any calendar quarter, either to be added to principal or to be distributed to or for the benefit of Troy at a later date.

SIGNED January 19, 2021.

_____
Judge Presiding by Assignment

**R.190**

# APPENDIX 2

## IN THE PROBATE COURT OF EL PASO COUNTY, TEXAS
## PROBATE COURT NUMBER ONE

IN THE MATTER OF:          )
                                )     Cause No. 2016-CPR00308
THE TROY S. POE TRUST      )

### ORDER DENYING RESPONDENT'S MOTION TO ASIDE FILINGS AND ORDERS

On March 8, 2024, the Court heard Respondent Richard C. Poe II's Motion to Set Aside Filings and Orders. Upon consideration of the motion, Petitioner's response, Respondent's reply and the arguments of counsel, the Court finds that the motion should be, and hereby is, denied.

Signed on March _20_, 2024.

_Sandee Bryan Marion_
**JUDGE PRESIDING**

Approved as to Form:

*/s/ Joseph L. Hood, Jr.*
**JOSEPH L. HOOD, JR.**
Attorney for Petitioner
Anthony E. Bock, Co-Trustee

*as to form only*
**DAVID F. JOHNSON**
Attorney for Respondent
Richard C. Poe II, Co-Trustee

*/s/ Karen Colón*
**KAREN COLÓN**
Successor Guardian ad Litem and
Attorney ad Litem for Troy S. Poe

*/s/ S. Anthony Safi*
**S. ANTHONY SAFI**
Attorney for Troy S. Poe

**R.474**

# APPENDIX 3

IN THE PROBATE COURT NO. ONE

EL PASO COUNTY, TEXAS

IN THE MATTER OF THE

§
§
§
§
§
§

NO. 2024-CPR00079

TROY S. POE TRUST

## ORDER DENYING MOTION FOR CLARIFICATION AND/OR RECONSIDERATION OF ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

BE IT REMEBERED that on June 28, 2024, pursuant to prior notice, came on to be heard Respondent Richard C. Poe II's Motion for Clarification and/or Reconsideration of Order Granting Motion for Partial Summary Judgment via Zoom video/teleconference, at which appeared Petitioner Troy S. Poe, through his successor guardian ad litem and attorney ad litem, and litigation counsel of record, as well as Petitioners Anthony E. Bock and Kellie Montecelli, Co-Trustees of the Troy S. Poe Trust, by and through their attorney of record, and Respondent Richard C. Poe II by and through his attorney of record. The Court, having considered said Motion, the Response thereto filed on June 25, 2024, and the arguments of counsel, concludes that said Motion lacks merit, and should be denied.

IT IS THEREFORE ORDERED that Respondent Richard C. Poe II's Motion for Clarification and/or Reconsideration of Order Granting Motion for Partial Summary Judgment filed herein on May 2, 2024, is in all things, denied.

Signed this __3RD__ day of ~~June~~ July 2024.

_Sandee Bryan Marion_
Sandee Bryan Marion
Judge Presiding

16445-101/SAS/2013979

**R.627**

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gina Verlander on behalf of Wallace Jefferson
Bar No. 19
gverlander@adjtlaw.com
Envelope ID: 93741868
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Response to Petition for Writ of Mandamus
Status as of 10/31/2024 3:10 PM MST

Associated Case Party: RichardCPoe, II

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Stephen D.Taylor | | staylor@winstead.com | 10/30/2024 12:27:53 PM | SENT |
| Kelly Martin | | kmartin@winstead.com | 10/30/2024 12:27:53 PM | SENT |
| David SGCMSJohnson | | dfjohnson@winstead.com | 10/30/2024 12:27:53 PM | SENT |
| JACOB CRAWLEY | | jcrawley@winstead.com | 10/30/2024 12:27:53 PM | SENT |

Associated Case Party: TroySPoe

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| James A.Martinez | | martinezja@jmeplaw.com | 10/30/2024 12:27:53 PM | SENT |
| Karen Colon Colon | 24074058 | karen@kcolonlaw.com | 10/30/2024 12:27:53 PM | SENT |
| S. Anthony Safi | 17516800 | safi@mgmsg.com | 10/30/2024 12:27:53 PM | SENT |
| James Martinez | 791192 | eservice@jmeplaw.com | 10/30/2024 12:27:53 PM | SENT |

Associated Case Party: AnthonyEBock

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph Hood | 9943250 | hood@windlehood.com | 10/30/2024 12:27:53 PM | SENT |
| Wallace B.Jefferson | | wjefferson@adjtlaw.com | 10/30/2024 12:27:53 PM | SENT |
| Rachel A.Ekery | | rekery@adjtlaw.com | 10/30/2024 12:27:53 PM | SENT |
| Nicholas Bacarisse | | nbacarisse@adjtlaw.com | 10/30/2024 12:27:53 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Gina Verlander on behalf of Wallace Jefferson
Bar No. 19
gverlander@adjtlaw.com
Envelope ID: 93741868
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Response to Petition for Writ of Mandamus
Status as of 10/31/2024 3:10 PM MST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Virginia Munoz | | vmunoz@mgmsg.com | 10/30/2024 12:27:53 PM | SENT |
| Hala Abdel-Jaber | 24133142 | abdel-jaber@mgmsg.com | 10/30/2024 12:27:53 PM | SENT |
| Melissa Carrasco | | mcarrasco@mgsmg.com | 10/30/2024 12:27:53 PM | ERROR |

Associated Case Party: Hon SandeeBryanMarion

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sandee BryanMarion | | judgesandeemarion@gmail.com | 10/30/2024 12:27:53 PM | SENT |